D. P. SMITH, *Appellee*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant.*

No. 16,418.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Notice of Defects—Assumption that Master Has Discharged His Obligation.* A railway engineer is not bound to know every defect existing in the ties and rails of the track over which he runs his engine. If the track, ties and rails are in place he has the right to assume that the company has discharged its obligation to keep them in reasonably safe repair.

2. —— *Assumption of Risk.* In an action by a railway engineer against the company to recover for personal injuries received in the derailment of his engine, caused by defective ties and rails, where the defects had existed for such a length of time that the railway company was bound to have notice of them, and where it was shown that the engineer had no knowledge of the defects and no opportunity of knowing of their existence except such as came to him in operating his engine over the track, *held*, that the risk as to the condition of the roadbed was not one which he assumed.

3. RAILROADS—*Agreement by Employee to Give Notice of Claim for Injuries—Waiver.* In the action mentioned in the preceding paragraph the answer set up as a defense the failure of

the plaintiff to give notice in writing of his claim for injuries within thirty days, as provided in the contract of employment At the trial the plaintiff, without objection, testified that some one from the claim department of the company came to his house three weeks after the accident and took from him a written statement concerning the accident and his injuries. The defendant then introduced in evidence the written statement itself, signed by the plaintiff, stating the time, place, manner and cause of his being injured and the nature and extent of his injuries. *Held*, that the taking of the written statement constituted a waiver by the company of the failure to give the notice.

Appeal from Brown district court; WILLIAM I. STUART, judge. Opinion filed March 12, 1910. Affirmed.

*M. A. Low,* and *Paul E. Walker,* for the appellant.

*Joseph G. Waters, John C. Waters,* and *John F. Kerrigan,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: On the evening of June 7, 1907, D. P. Smith, an engineer in the employ of the defendant, was running an engine pulling a freight train from Horton to Topeka. When about five miles from Horton, at the foot of a long, steep grade, and at a tangent of a curve, the engine was derailed and the plaintiff received injuries to recover damages for which he brought this action. The jury returned a verdict in his favor for $2000, and the defendant appeals.

The engine which the plaintiff was running belonged to the 1600 type or class, very large and heavy. The track where the accident occurred had been constructed for twenty years, and was of sixty-pound rails, somewhat worn. On account of the lightness of the rails a rule of the company limited the speed of engines of this type to fifteen miles an hour. The petition alleged that the derailment was caused by defective ties and rails.

Among other defenses, the answer set up that the plaintiff was guilty of contributory negligence in running his engine at a high rate of speed, in excess of fifteen miles an hour. The plaintiff testified that he was familiar with the rule limiting the speed and was running fifteen miles an hour. The witnesses for the defendant placed various estimates on the speed of the train, from twenty to forty miles an hour. The derailment and overturning of the engine and the fact that twenty of the freight cars were piled in confusion on the right of way tended strongly to discredit the engineer's testimony, but we can not say as a matter of law that it was physically impossible for this to have resulted with the train running at a speed of fifteen miles. The speed of the train was, under all the evidence, a question for the jury, and as to this fact their verdict must stand.

The jury made a special finding that the negligence of the defendant consisted in having defective ties and rails. Some of the defendant's own witnesses testified that the inside ball of the rail was worn, and that a rail in that condition on a curve is unsafe. Witnesses for the plaintiff testified that there were at least six rotten and defective ties at the place where the derailment occurred. There was therefore some evidence to sustain a finding of the jury to the effect that the derailment was caused by defective ties and rails and that these defects had existed for such a length of time that the defendant was bound to have notice of them.

If the jury believed the plaintiff's testimony that he did not know the condition of the ties and rails it disposes of the defense of assumed risk. (*Railway Co. v. Michaels,* 57 Kan. 474; *Railway Co. v. Bancord,* 66 Kan. 81; *Brinkmeier v. Railway Co.,* 69 Kan. 738.) There are doubtless cases the extreme logic of which would seem to justify holding that an engineer has equal opportunities with the railway company to know every defect existing in the ties and rails in the track over

Smith v. Railway Co.

which he runs his engine, but in our judgment so to hold is contrary to the weight of reason. The more recent tendency of the courts is against any extension of the doctrine of assumed risk. The present case is obviously different from one where an employee constantly engaged in work in and about a railroad yard is injured by a defect in the tracks the condition of which he is required to know. Thus, in *Clark v. Mo. Pac. Rly. Co.*, 48 Kan. 654, a brakeman was held to have assumed the risk as to the condition of the roadbed where he had equal knowledge with the master of the defects which caused his injury. To the same effect is *Railway Co. v. Click*, 78 Kan. 419. On the other hand, in *St. L., Ft. S. & W. Rld. Co. v. Irwin*, 37 Kan. 701, it was held that the conductor of a train is not required to know all the defects and obstructions that may exist on the road over which he runs. What reason can be suggested why the same rule should not apply to an engineer? It is true that the duties of a conductor require him to remain on the inside of the train, while the duties of an engineer oblige him to keep his eyes on the track; but the engineer's lookout is always ahead to see if the track is clear, and he is not required to examine the condition of the ties and rails. It is sufficient for him to know that they are in place, and if they are he has the right to assume that the company has discharged its obligation to keep them in reasonably safe repair.

When the plaintiff entered the employ of the railway company he executed a written agreement which provided that, if he sustained any personal injury while in the service of the company for which he might make claim for damages, he would within thirty days thereafter give notice in writing to the general or claims attorney, stating the time, place, manner, cause and extent of his injuries and his claim therefor, and that his failure to give such notice should constitute a bar to any suit on account of such injuries. The contract of employment was introduced in evidence by the de-

fendant, and there was no showing by the plaintiff that he gave any notice of the injury. At the close of the evidence the defendant requested the court to instruct the jury that if they found from the evidence that the plaintiff voluntarily signed the contract and did not give the notice provided therein, and that the railway company had not waived the giving of such notice, their verdict should be for the defendant. The court refused to give this instruction, but gave one in which the jury were told that the contract was not binding on the plaintiff and the fact that he did not comply with the agreement and give such notice constituted no defense to the action.

In our view this raises the only question in the case. Conceding that the provision requiring notice of the claim was a reasonable and lawful one, that the plaintiff was bound thereby and that the instruction given by the court was erroneous, the error must be regarded as wholly immaterial, for the reason that on the trial the defendant introduced evidence showing a waiver by the company of this provision of the contract. The plaintiff himself testified, without objection, that some one from the claim department of the company came to his house three weeks after the injury and took from him a written statement about the wreck. The defendant then introduced in evidence the written statement itself, which states the time, place, manner and cause of his being injured and the nature and extent of his injuries. It is signed by the plaintiff. The only detail in which it fails to comply with the provisions of the contract as to notice is in not stating the amount of his claim for injuries; but, manifestly, this omission would not be sufficient to deprive him of his right to maintain the action. Being in the nature of a forfeiture, the provision must be strictly construed. A similar provision in the contract was involved in *Railway Co. v. Walker,* 79 Kan. 31. The question there arose upon the pleadings, but it was held that the provision may be waived, that no consideration is

Smith v. Railway Co.

necessary to support a waiver, and that it is not necessary to show facts amounting to a technical estoppel in order to constitute waiver of such a provision. Whether the written statement which the defendant obtained from the plaintiff be regarded as a sufficient compliance with the condition requiring notice to be given or the action of the defendant in taking the statement be considered as a sufficient excuse for the failure of the plaintiff to give the notice is not important. It is well established that the courts will not enforce a forfeiture where the conduct of the other party is sufficient upon which to base a reasonable excuse for the default. (*Hartford Life Ins. Co. v. Unsell,* 144 U. S. 439.) At the top of the statement made to the claim agent there is this pencil memorandum, "Horton, July 24-'07," indicating that the statement was made on that date, which was more than thirty days from the date the injuries were received. The plaintiff, however, testified that he made, and that the agent took, the statement within three weeks after the accident. The majority of the court are of the opinion that since the defendant offered no evidence to the contrary, further than what appeared by the memorandum referred to, there was no question of fact in regard to waiver that should have been submitted to the jury.

The judgment is therefore affirmed.

PORTER, J. (dissenting) : I think the instruction requested should have been given, and that it was error for the court to withdraw from the consideration of the jury the contract of employment on the ground that it was not binding on the plaintiff. If the written statement was in fact taken by the claim agent after the expiration of thirty days from the time of the accident there was, of course, no waiver, and the question whether there was such a waiver should have been submitted to the jury. With these exceptions I concur in all that is said in the opinion.